IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**WILLIAM YEAGER**                                                                                    **PLAINTIFF**

V.                                    **CASE NO. 5:20-CV-05054**

**KUAF 91.3 NPR PUBLIC RADIO**
**and NATIONAL PUBLIC RADIO**                                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Pursuant to the diversity statute, 28 U.S.C. § 1332, Plaintiff William "Billy" Yeager brings claims for defamation, false light,[1] and professional negligence against Defendants National Public Radio ("NPR") and KUAF 91.3 NPR Public Radio ("KUAF"). Yeager was granted leave to proceed *in forma pauperis* ("IFP"). (Doc. 6). The Court screens Yeager's claims pursuant to 28 U.S.C. § 1915(e)(2).

### I. BACKGROUND

#### A. The Instant Case

According to the allegations of the Complaint (Doc. 2), Yeager is a songwriter, a musician, an independent filmmaker, a humanitarian, and a media activist. On March 23, 2017, NPR published an article on its website entitled, "The Most Expensive Record Never Sold, Discogs, Billy Yeager and the $18,000 Hoax that Almost Was."[2] The story was allegedly played over the radio by NPR and its local affiliate, KUAF. *Id.* at 2

---

[1] Mr. Yeager's Complaint refers to this as a "false light invasion of privacy" claim.

[2] While Mr. Yeager does not name the offending article in his Complaint, it is available in the public record, and the Court takes judicial notice of it.

1

The offending story revolves around the sale of a vinyl record: a copy of Yeager's 1989 album "301 Jackson Street." According to the story, this record was offered for sale in January 2017 on Discogs, an online marketplace for music collectors. *Id.* at 3. The record sold for $18,000, which (according to NPR's story), was the most expensive record ever sold on Discogs. On March 22, 2017, Discogs sent a press release to NPR regarding the record's sale. *Id.* The next day, however, Discogs cancelled the sale because they believed it was fraudulent. *Id.*

The story recounts the sale of Yeager's record and the subsequent search for Yeager. The article does indeed accuse Yeager of buying his own record on Discogs in order to generate publicity. The story also provides a colorful rendition of Yeager's past activities, many of which Yeager denies in his Complaint. According to Yeager, the article falsely accuses him of participating in a number of dubious efforts at self-promotion, including holding himself out to be Jimmy Story, the son of Jimi Hendrix. *Id.* at 67. According to the Complaint, the NPR's story includes eight defamatory statements:

1. "This is the story of a hoax that almost was. Its motivating force was a hunger for fame, or infamy, or whispered legend in a particularly American sort of way."

2. "The lightning-fast turnaround on this record-breaking sale, however, seems to have been a fiction woven by the record's creator."

3. "Now, it seems clear that Yeager has attempted to perpetrate another hoax: He is, it seems, the seller who posted 301 Jackson St. on Discogs. He's also likely the buyer. Which means that $18,000 never changed hands and also raises the possibility that the test pressing of 301 Jackson St. does not exist at all."

4. "Everything about this tale points to Yeager having bought his own unknown record from himself, short of Yeager actually admitting it. But to what end?  Likely the one you're reading."

5. "What comes after this, Yeager's latest arguable success (however fleetingly, he held a sales record over Prince—more than most can hope for, at least) might be a form of infamy that he could, for once, be satisfied with."

6. "This guy, as good as he might possibly be, is far more interested in infamy than he is in fame and the chase of pulling the wool over people's eyes.  He's a huckster. He's a charlatan."

7. "Yeager, for all the belief he has in his promise and his failures expressing it, has repeatedly poured more of his creative energy into being a trickster-booster than he has an artist."

8. "The story of Billy Yeager is one of purposeless obfuscation."

*Id.* at 57, 61.  In addition, Yeager asserts that the following five statements are actionable because they show him in a false light:

1. "The album, called 301 Jackson St., was recorded by Billy Yeager, a Florida man who has pursued musical fame (or at least notoriety) for 37 years, by his own account."

2. "In 1990, the story goes, Hornsby heard a demo tape of Yeager's, liked what he heard and connected Yeager with Capitol Records, who gave Yeager a shot.  It was the closest he would come to fame, but it cemented in Yeager's mind what he'd thought for some time: that he was destined for, perhaps owed, greatness."

3. "Eventually, Yeager began experimenting with the web and the infinite possibilities it offers, to those with ample time on their hands, for invention, obfuscation and, most importantly, self-mythology."

4. "Instead, Yeager created a murkier—possibly entirely fictional—network of identities with the purpose of propping himself up, like stilts under a sun-worn beach house. This network appears to be composed of publicists, managers, film producers and retailers of Yeager memorabilia—or what normal folks call items of sentimental value."

3

    5.    "Yeager, for all the belief he has in his promise and his failures expressing it, has repeatedly poured more of his creative energy into being a trickster- booster than he has an artist. What comes after this, Yeager's latest arguable success (however fleetingly, he held a sales record over Prince—more than most can hope for, at least) might be a form of infamy that he could, for once, be satisfied with."

*Id.* at 64–65.

Yeager believes that the author of the story, Andrew Flanagan, made no effort to verify the truth of these statements and failed to contact him. He asserts that Mr. Flanagan and another journalist violated various journalistic codes of conduct by failing to conduct due diligence for their story. Accordingly, he alleges that Mr. Flanagan's supervisor—presumably NPR—should be liable for Mr. Flanagan's "professional negligence."

As relief, Yeager seeks compensatory damages in the amount of $250 million dollars and punitive damages.[3] The Complaint is 71 pages long and touches on a number of subjects, some repeatedly, including the provisions of early common law, the law of defamation as established by the Supreme Court, the elements of a defamation claim under the laws of numerous states, and various definitions and codes of conduct.

### B. Related Cases

This is not the first time Yeager has sued NPR regarding the offending article. In March 2018, Yeager filed a diversity action against NPR concerning this same subject matter in the United District Court for the District of Kansas, *Yeager v. NPR, et al.*, Civil No. 5:18-cv-0419 (hereinafter, the "Kansas Case"). The subject matter of the Kansas

---

[3] In this regard, Yeager encourages the Court to consider that NPR receives funding in the amount of $445 million dollars each year.

4

Case was the same story at issue in the instant matter. See Kansas Case, Doc. 46, pp. 4–6. The defendants in the Kansas Case were NPR, Mr. Flanagan, Jacob Ganz, who participated in the broadcast concerning the article, and Ashley Messenger, an attorney for NPR.

The Kansas District Court stated that Yeager's claims would be dismissed unless Yeager filed an amended complaint that stated a claim upon which relief could be granted. *Yeager v. Nat'l Public Radio*, 2018 WL 5884596, at *1 (D. Kan. Nov. 9, 2016), *aff'd* 773 F. App'x 1030 (Mem) (10th Cir. 2019), *petition for cert. denied*, 140 S. Ct. 665 (U.S. 2019). Yeager then filed a 220-page amended complaint. *Id.* In the amended complaint, Yeager alleged state law claims for defamation, slander, and false-light invasion of privacy. *Id.* at *3. The Kansas District Court found that Yeager's claims failed because NPR's statements were: (1) not made with actual malice; (2) based on the speaker's subjective opinion; (3) not defamatory; and (4) were so vague as to be subject to multiple interpretations. Thus, the Kansas District Court held that the offending statements were protected by the First Amendment.

Yeager appealed the dismissal to the Court of Appeals for the Tenth Circuit. *Yeager v. NPR, et al.*, Civil No. 18-3252. The Tenth Circuit affirmed the dismissal, noting that while Yeager had preserved his argument that he did not need to prove actual malice, he did not preserve his argument as to the Kansas District Court's other grounds for dismissing his claims. 773 F. App'x at 1032. On October 19, 2019, Yeager filed a petition for writ of certiorari to the United States Supreme Court. *Yeager v. NPR, et al.*, Civil No. 19-6442. The petition was denied on December 16, 2019. *Id.*

## II. LEGAL STANDARD

On initial review, the Court must dismiss a complaint, or any portion of it, if it contains claims that: (a) are frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). The Court is obligated to screen an IFP case prior to service of process being issued.

A claim is frivolous when it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court bears in mind, however, that when "evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III. DISCUSSION

After carefully reviewing the Complaint, the Court concludes that it should be dismissed for failure to state a claim. Yeager's claims against NPR and KUAF for defamation are barred by res judicata. Yeager's claims against NPR and KUAF for false light are dismissed because Yeager has failed to state sufficient facts to support a claim for which relief may be granted. Finally, the Court dismisses Yeager's professional negligence claims against NPR and KUAF because Arkansas does not recognize a professional negligence claim against journalists.

### A. Res Judicata Bars Yeager's Defamation Claims Against NPR and KUAF

Under Kansas law,[4] the preclusive effect of the judgment against Yeager in the Kansas Case is governed by the related doctrines of res judicata and collateral estoppel. *Waterview Resolution Corp. v. Allen*, 58 P.3d 1284, 1290 (Kan. 2002). Below, the Court first discusses how res judicata bars Yeager's defamation claim against NPR, which is followed by a discussion of how collateral estoppel bars Yeager's defamation claim against KUAF.

With respect to Yeager's defamation claim against NPR, all four elements of res judicata are met. Res judicata bars relitigation of a subsequent suit when the following four elements are present in the prior litigation and the current litigation: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of persons for or against whom claim is made. *Id.* at 1290 (citing *Regency Park v. City of Topeka*, 981 P.2d 256, 265 (Kan. 1999)). "When the same facts, same parties, and same issues have previously been litigated before a court of competent jurisdiction, the doctrine of res judicata prevents a second assertion of the same claim." *Steele v. Guardianship and Conservatorship of Crist*, 840 P.2d 1107, 1114 (Kan. 1992). As to the first, third, and fourth factors, in both cases, Yeager sued NPR for money damages. As to the second factor, while Yeager's first

---

[4] In *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997), the Eighth Circuit stated that it had "consistently looked to state law to determine the effect of the judgment of another federal court in a case where state law supplied the rule of decision. This rule applies when the original judgment is that of another federal court sitting in diversity." *Id.* (internal citations and quotation marks omitted). Thus, "the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum." *Id.*

7

defamation claim arose under Kansas law and his present defamation claim presumably arises under Arkansas law, the Court finds that the same facts are at issue in both cases because the same First Amendment defenses apply. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–21 (1990) (explaining that the First Amendment protects vague statements and opinions that do not imply defamatory facts). The Kansas District Court and the Tenth Circuit dismissed Yeager's first defamation claim based upon these First Amendment defenses. Accordingly, because the Kansas Case already decided Yeager's defamation claim against NPR, that claim is barred by res judicata.

The Court next turns to Yeager's defamation claim against KUAF, which was not a party to the Kansas Case. The Court concludes that issue preclusion bars Yeager's defamation claim against KUAF because the issues decided in the Kansas Case bar that claim.

Issue preclusion, also known as collateral estoppel, has three elements under Kansas law:

> (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment.

*Regency Park*, 981 P.2d at 265 (citing *KPERS v. Reimer & Koger Assocs., Inc.*, 941 P.2d 1321 (1997)). The first factor is satisfied because Yeager's defamation claim was dismissed by the Kansas District Court for failure to state a claim, and Kansas courts have held that dismissals for failure to state a claim under the Federal Rules qualify as an "adjudication on the merits" for the purposes of collateral estoppel. *Tennant v. Miller*, 350 P.3d 1138, at *2 (Kan. App. 2015). Second, the Court concludes that NPR and

8

KUAF are in privity as to Yeager's defamation claim, as KUAF is a local NPR station that rebroadcast the story about Yeager. While privity is hard to define, Kansas courts have concluded that privity may only attach where there is no conflict between parties and where "the result can be defended on principles of fundamental fairness in the due process sense." *Cain v. Jacox*, 354 P.3d 1196, 1200 (Kan. 2015) (quoting *St. Paul Fire and Marine Ins. Co. v. Tyler*, 974 P.2d 611, 618 (Kan. App. 1999)). Here, NPR and KUAF have the exact same interests: They both published the identical story, and they have the same First Amendment interests at issue in that publication. Accordingly, the Court finds that to hold KUAF to the judgment in the Kansas Case does not deny it fundamental due process and fairness.

Finally, the Court concludes that the Kansas District Court's decision that the statements were protected by the First Amendment was necessary to the holding in the case before it. Kansas courts have granted preclusive effect where a trial court decision is based on two or more alternative, independent grounds, and the decision is affirmed on appeal on less than all of the grounds. *See Landrith v. Summers*, 346 P.3d 1113, at *6 (Kan. App. 2015) (unpublished) (applying preclusive effect to prior judgment where Tenth Circuit did not address all of the trial court's holdings). Further, "[a] party who elects to appeal on one issue, omitting another issue on which it lost, is subject to issue preclusion on the issue not appealed." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Practice & Proc. § 4433 (3d ed. 1998). The Kansas District Court dismissed Yeager's defamation claim for several reasons, including that the statements at issue were based on the writer's subjective opinion or so vague as to be subject to multiple interpretations. 2018 WL 5884696, at *5–9. The Tenth Circuit

9

affirmed the dismissal and found that Yeager failed to preserve his arguments as to whether the offending statements were protected opinions or too vague to be defamatory. 773 F. App'x at 1032. Accordingly, the Court concludes that the Kansas District Court's decision on these issues has preclusive effect, and Yeager's defamation claim against KUAF is barred.

### B. Yeager Has Failed To State a False Light Claim

The Court next turns to Yeager's claims of false light against NPR and KUAF. The Court concludes that, under Arkansas law, Yeager has failed to state facts upon which relief may be granted as to these claims. "A false light/invasion of privacy claim has two essential elements: the complaining party must show (1) that the false light in which he was placed by the publicity would be highly offensive to a reasonable person, and (2) that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Sawada v. Walmart Stores, Inc.*, 473 S.W.3d 60, 68–69 (Ark. App. 2015) (citing *Dodrill v. Ark. Dem. Co.*, 590 S.W.2d 840, 845 (1979) (citing Restatement (Second) of Torts, § 652E (1977))). The Arkansas Supreme Court has explained that the second element means that the plaintiff must establish "actual malice" by the defendant. *Dodrill*, 590 S.W.2d at 845; *see also Sawada*, 473 S.W.3d at 69 (applying actual malice standard). "Actual malice" means that the defendant must have "entertained serious doubts as to the truth of his publication." *Dodrill*, 590 S.W.2d at 845. While Yeager makes conclusory allegations that NPR and KUAF acted with actual malice, he makes no factual allegations that NPR knew or "entertained serious doubts" as to whether the content of its story was true. Instead, his allegations are that NPR (and, by extension, KUAF) failed to do proper due

10

diligence on their reporting about him. This is not enough to allege actual malice. *See Wal-Mart Stores, Inc. v. Lee*, 74 S.W.3d 634, 658 (Ark. 2002) ("A failure to investigate does not establish the bad faith inherent in malice."). The Court notes that the Kansas District Court reached the same conclusion.[5] Accordingly, the Court dismisses without prejudice Yeager's false light claims.

### C. Arkansas Does Not Recognize a Claim for Professional Negligence

Yeager makes one claim against NPR and KUAF that he did not make in the Kansas Case: he argues that NPR and KUAF committed "professional negligence" because they "failed to ensure the standards of NPR's Code were met." (Doc. 2, p. 38). But he pointed to no Arkansas cases—and the Court is aware of none—that have applied a professional duty of care to a journalist. To prove negligence in Arkansas, there must be a failure to exercise proper care in the performance of a legal duty that the defendant owed the plaintiff under the circumstances. *Shannon v. Wilson*, 947 S.W.2d 349 (Ark. 1997). The question of what duty, if any, is owed by one person to another is always a question of law. *Key v. Coryell*, 185 S.W.3d 98, 106 (Ark. Ct. App. 2004) (citation omitted).

The Court concludes that the Arkansas Supreme Court, if confronted with the

---

[5] Even though the Kansas District Court dismissed a false light claim by Yeager, that decision does not necessarily have preclusive effect here. Courts applying Kansas law have apparently concluded that defamation and false-light claims should be treated identically, including applying the same defenses to such claims. *Stead v. Unified Sch. Dist. No. 259*, 92 F. Supp. 3d 1088, 1109 (D. Kan. 2015) (citations omitted). There is no such authority from Arkansas courts; in fact, Arkansas courts have held that defamation and false light claims should not be treated identically. *See Dodrill*, 590 S.W.2d at 637 ("The invasion of privacy claim stands upon a different footing than the defamation claim").

11

issue, would not create a separate cause of action for journalistic malpractice. Indeed, in the context of defamation claims, the Arkansas Supreme Court has clearly stated that the "publisher of a libelous article shall be liable to the defamed private individual for failure *to exercise ordinary care* prior to publication to determine the defamatory potential of its statements." *Dodrill*, 590 S.W.2d at 844. The Court concludes that there is not a heightened duty of professional care for journalists under Arkansas law. The Court also notes that most of the out-of-state cases that have addressed this question similarly reject the existence of a "journalistic malpractice" cause of action. *See Kassel v. Gannett Co., Inc.*, 875 F.2d 935, 943 (1st Cir. 1989) ("[T]he actions of a journalist are judged not in comparison to prevailing professional standards, but according to customary tort criteria."); *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 883 (Minn. 2019) (applying "reasonable person under similar circumstances" duty to journalist); *Mich. Microtech, Inc. v. Fed. Publ'ns, Inc.*, 466 N.W.2d 717, 722 (Mich. App. 1991) ("The Michigan malpractice statue does not apply to newspaper reporters."); *Lansdowne v. Beacon Journal Publ'g Co.*, 512 N.E.2d 979 (Ohio 1987) (rejecting application of professional negligence standard in a private party defamation action); *Kohn v. West Hawaii Today, Inc.*, 656 P.2d 79, 81 (Haw. 1982) (applying negligence standard to case against media defendant); *Schrottman v. Barnicle*, 437 N.E.2d 205, 215 (Mass. 1982) (holding that expert testimony was not necessary to apply standard of ordinary negligence to a journalist's actions); *but see Bank of Oregon v. Ind. News, Inc.*, 670 P.2d 616, 628 (Or. App. 1983) (holding that "when negligence is alleged against a media defendant, there should be a professional standard of care").

Accordingly, this Court declines to recognize a cause of action for journalistic

12

malpractice in Arkansas, and the Court dismisses with prejudice Yeager's claim for professional negligence.

## IV. CONCLUSION

For the reasons stated, this case is **DISMISSED**. The Court **DISMISSES WITH PREJUDICE** Yeager's defamation claims. The Court **DISMISSES WITHOUT PREJUDICE** Yeager's false-light claims. Finally, the Court **DISMISSES WITH PREJUDICE** Yeager's professional negligence claims.

The Motion to be Allowed to File Documents Electronically (Doc. 5) is **DENIED AS MOOT**.

**IT IS SO ORDERED** on this 12th day of May, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE